[No. B024880. Second Dist., Div. Four. June 21, 1988.]

W. J. BAKER, Plaintiff and Respondent, v.
LAWRENCE BIRNBAUM, Defendant and Appellant.

**COUNSEL**

Keenan & Tobin and P. Dennis Keenan for Defendant and Appellant.

Harney, Wolfe, Shaller & Carr, Frederick C. Shaller and Thomas Kallay for Plaintiff and Respondent.

## OPINION

**WOODS, P. J.**—This is an appeal from an order denying a motion to compel arbitration. The motion was brought by Lawrence Birnbaum, a physician, named as a defendant in a complaint filed by B. H. Baker, for professional negligence, and by her husband, respondent, W. J. Baker, for loss of consortium. The motion was based on an agreement to arbitrate signed by Mrs. Baker which appellant contends also bound Mr. Baker, a nonsignatory. The motion was granted as to Mrs. Baker but denied as to Mr. Baker.

Few substantive facts appear in the record. It seems, however, that in November 1984, Mrs. Baker underwent surgery by appellant to replace breast implants which appellant had previously placed in her breasts. Prior to the 1984 surgery, Mrs. Baker signed an agreement to arbitrate "any dispute as to medical malpractice . . . ." The agreement purported to bind Mrs. Baker and "anyone else who may have a right to assert a claim on [her] behalf . . ." as well as other persons for whom she had responsibility, such as her spouse and any children.

Mrs. Baker was subsequently diagnosed as having cancer. In 1986, she filed the instant action against appellant. She alleged professional negligence in the medical care rendered by Dr. Birnbaum from November 1984 through December 1985. Additionally, Mr. Baker alleged a claim for loss of consortium. Only Mr. Baker is involved in this appeal.

Appellant answered and raised 12 affirmative defenses. The 12th alleged that Mrs. Baker was barred from bringing her action by virtue of the 1984 agreement to arbitrate. No comparable defense was explicitly raised with respect to Mr. Baker's claim.

Based on admissions by Mrs. Baker that she had signed agreements to arbitrate in both 1977 and 1984, appellant moved to compel arbitration as to both the Bakers.[1] The motion was granted as to Mrs. Baker but denied as to Mr. Baker, the court concluding, "Mr. Baker is not bound by an agreement he did not sign."

This appeal followed. We affirm the order of the trial court.

---

[1] It is clear from the complaint that the basis of this action is the medical care Mrs. Baker received in 1984-1985. It is conceded by appellant that the 1977 surgery "is not the subject of any claim for damages by plaintiffs in the current lawsuit." Moreover, the 12th affirmative defense raised by appellant's answer refers only to the 1984 agreement to arbitrate.

We conclude, therefore, that the 1977 agreement to arbitrate relates to medical services fully rendered prior to 1984 and is not the subject of the action before us and we do not consider it.

■ We are asked to decide whether a spouse who signs an agreement to arbitrate her medical malpractice claims thereby binds a nonsignatory spouse to arbitration when the medical services for which the signatory spouse contracted were for herself only. On this question, we follow the holding of our decision in *Rhodes* v. *California Hospital Medical Center* (1978) 76 Cal.App.3d 606 [143 Cal.Rptr. 59], that the "policy [in favor of arbitration] does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement." (*Id.*, at p. 609.)

■ As *Rhodes* suggests, public policy favors arbitration as an expeditious and economical method of dispute resolution which relieves crowded civil court calendars. (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706-707 [131 Cal.Rptr. 882, 552 P.2d 1178].) Arbitration assumes, however, an election by the parties involved to use it as an alternative to the judicial process. A party cannot be compelled to arbitrate a dispute it has not elected to submit. (*Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 355 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].)

Both these considerations are reflected in Code of Civil Procedure section 1295, which authorizes arbitration in medical malpractice disputes. ■ "In general, section 1295 insulates certain medical service contracts containing arbitration clauses against attack on grounds they are adhesive, unconscionable, or otherwise improper. In order to be so insulated, the contract must contain prominent notice, in statutory language, of the arbitration clause. Its purpose is to give people signing such agreements the forewarning that they are relinquishing the right to a jury or court trial if a malpractice issue arises. [Citation.]" (*Dinong* v. *Superior Court* (1980) 102 Cal.App.3d 845, 849 [162 Cal.Rptr. 606].)

Section 1295 does not discuss whether claimants other than signatories may be bound by the agreement to arbitrate. A line of cases has held that, in some circumstances, a person who has authority to contract for medical services on behalf of another may, in the exercise of that authority, bind that person to an agreement to arbitrate his or her medical malpractice claims. This line of cases had its genesis in *Doyle* v. *Giuliucci* (1965) 62 Cal.2d 606 [43 Cal.Rptr. 697, 401 P.2d 1]. There the Supreme Court held that implicit in a parent's duty to provide for the care of a child is the power to enter into a contract for medical care which binds the child to arbitrate a malpractice claim. This holding has been extended to a variety of other relationships. (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699 [agent-principal]; *Hawkins* v. *Superior Court* (1979) 89 Cal.App.3d 413 [152 Cal.Rptr. 491] [husband-wife]; *Wilson* v. *Kaiser Foundation Hospitals* (1983) 141 Cal.App.3d 891 [190 Cal.Rptr. 649] [parent-child, for prenatal

injuries]; *Harris* v. *Superior Court* (1986) 188 Cal.App.3d 475 [233 Cal.Rptr. 186] [group health care provider's agreement to arbitrate binds its employee].)

■ We find appellant's reliance on the *Hawkins* decision as authority, in support of his argument that Ms. Baker had the implied authority to bind respondent to arbitrate, misplaced. In *Hawkins,* deceased husband had enrolled his wife and himself in a Kaiser health plan. The plan provided that the family would be bound by the master contract applicable to the type of coverage applied for. The master contract provided in pertinent part: " 'Any claim arising from the violation of a legal duty incident to this Agreement shall be submitted to binding arbitration, . . .' " (89 Cal.App.3d at p. 415.) The *Hawkins* court concluded that these facts equated with *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, in that husband was empowered to contract for wife in this situation and she was bound by the arbitration provision.

This, however, is not the situation before us. Mrs. Baker contracted for medical care solely on her own behalf, and the agreement to arbitrate related only to such services as would be provided to her under that contract.

The case before us is governed by *Rhodes* v. *California Hospital Medical Center, supra,* 76 Cal.App.3d 606, relied on by respondent. In *Rhodes,* a woman entering a hospital signed an agreement to arbitrate. A second such agreement was signed on her behalf by her husband, apparently because of some question about her competency. Later, when her husband and son brought a wrongful death action against the hospital, the hospital moved to compel arbitration based on these agreements. We affirmed the order of denial.

Our decision rested upon the simple proposition set forth at the outset of this opinion, that the policy favoring arbitration "does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement." (*Id.,* at p. 609.) This holding applies with equal force to the case before us.

Moreover, contrary to appellant's assertion, there is nothing on the face of the 1984 contract that extends it to any claim by Mr. Baker. ■ In examining the agreement we "attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made. [Citation.]" (*Weeks* v. *Crow* (1980) 113 Cal.App.3d 350, 353 [169 Cal.Rptr. 830].) As we have discussed, it seems clear from paragraph 3 of the 1984 agreement

that the submission to arbitration of any dispute as to medical malpractice refers to claims asserted by Mrs. Baker or *on her behalf.* The agreement further provides that if she signs the agreement "on behalf of some other person for whom I have responsibility . . ." that person will also be bound. There is no need to interpret the legal effect of this language, as there is no language in the agreement which would support a finding that it was signed on behalf of any person other than Mrs. Baker.

Clearly, under our decision in *Rhodes,* the trial court properly denied appellant's motion as to Mr. Baker.

Appellant has also relied on Division Five's decision in *Herbert* v. *Superior Court* (1985) 169 Cal.App.3d 718 [215 Cal.Rptr. 477], in his effort to persuade us that respondent should be compelled to arbitrate this claim. Even though it is distinguishable on several points, *Herbert* is nonetheless at odds with our holding here.

*Herbert* involved a wrongful death action brought by a widow and her eight children against a group health care provider. The decedent, husband and father, had enrolled himself, his wife and five minor children in the group health plan. Three adult children were not members of the plan. The health plan contained an arbitration clause. The appellate court held that not only were the wife and minor children bound by the arbitration clause but the adult children, whom the trial court had excluded, were also bound.

Relying on principles expounded in the *Doyle* and *Hawkins* decisions, the *Herbert* court reasoned that the decedent had the implied authority to bind his wife and minor children to the arbitration clause contained in his group medical coverage based on their fiduciary relationship and his right and duty to provide for their medical care.

The court went further and concluded that the arbitration clause contained in the contract executed by Mr. Herbert also bound his adult children, nonmember heirs, to arbitrate their claims.

The court reasoned that the arbitration clause contained in the negotiated group health care plan was of the type approved by the Supreme Court in *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, and that this was significant because both those plans, unlike individual contracts for medical services, were negotiated from a parity of bargaining power. The arbitration provisions in such contracts negotiated "between parties possessing parity of bargaining strength" are therefore not contracts of adhesion. (*Herbert* v. *Superior Court, supra,* 169 Cal.App.3d at pp. 724-725, citing *Madden* v. *Kaiser Foundation Hospitals, supra,* at p. 703.) *Madden*

also concluded that neither case decisions nor policy call for an explicit waiver of a party's right to jury trial or for express conformance with Code of Civil Procedure section 631.

*Herbert* reasoned that since a single cause of action exists in the heirs for the wrongful death of a decedent, the nonsignatory heirs should not be allowed to split the ligitation into different tribunals. The court also relied on Code of Civil Procedure sections 1283.1 and 1295 as evidence of a legislative intent that a patient who signs an arbitration agreement may bind his heirs to that agreement regardless of whether the heirs are also members of the plan. Finally, the court reasoned that it would be unrealistic to require the signatures of all potential heirs on an agreement to arbitrate. (*Herbert* v. *Superior Court, supra,* 169 Cal.App.3d at p. 725.)

The case before us is distinguishable from *Herbert* for, by implication, *Herbert* acknowledges that an individual contract for medical services, as is involved here, should be more rigorously analyzed and less quickly applied to the claims of a nonsignatory. (See also *Hawkins* v. *Superior Court, supra,* 89 Cal.App.3d at p. 418 [distinguishing *Rhodes* on the basis that it involved an individual contract not a group health plan]; *Dinong* v. *Superior Court, supra,* 102 Cal.App.3d at pp. 852-853 [noting greater statutory protection for those signing individual contracts for medical services].)

We must expressly decline to follow *Herbert,* however, in that it, as appellant argues, would apparently attempt, even in this situation, to force respondent herein to arbitrate solely to avoid litigation of these claims in two different tribunals.

We consider the respondent's exercise of his right to a jury trial paramount to the court's convenience in having all parties litigate in a single action.

The order is affirmed. Respondent to recover costs.

McClosky, J., concurred.

**GEORGE, J.**—I concur in the judgment of the court and in the reasoning set forth in the majority opinion except for its criticism of the opinion of Division Five of this court in *Herbert* v. *Superior Court* (1985) 169 Cal.App.3d 718 [215 Cal.Rptr. 477]. Since the majority correctly finds *Herbert* "distinguishable on several points" (majority opn., *ante,* p. 293), I see no need to "expressly decline to follow *Herbert.*" (Majority opn., *ante,* p. 294.)

The majority, incorrectly in my opinion, concludes that the *Herbert* case "would apparently attempt . . . to force respondent herein to arbitrate

. . . ." (Majority opn., *ante,* p. 294.) However, the holding in *Herbert* distinguishes the situation, like that presented in the case before us, where "[t]here was no provision in the agreement whereby the signing party intended to bind his or her heirs to the arbitration clause." (*Herbert* v. *Superior Court, supra,* 169 Cal.App.3d at p. 725, fn. 2.) Furthermore, by expressing its disapproval of *Herbert,* the majority in cursory fashion expresses an opinion on an issue not before us, namely, construction of an arbitration provision in the context of the well-established rule that "[t]he statutory cause of action for wrongful death (sec. 377, Code Civ. Proc.) . . . is a joint one, a single one and an indivisible one" (*Watkins* v. *Nutting* (1941) 17 Cal.2d 490, 498 [110 P.2d 384]), the term "indivisible" signifying "that there cannot be a series of suits by heirs against the tortfeasor for their individual damages. [Citation.]" (*Cross* v. *Pacific Gas & Elec. Co.* (1964) 60 Cal.2d.690, 694 [36 Cal.Rptr. 321, 388 P.2d 353].) Since the result reached by Division Five is premised on this rule (*Herbert* v. *Superior Court, supra,* at p. 722), and the present case does not involve an action for wrongful death, I find the majority's discussion of the *Herbert* case to be inappropriate and unnecessary to our decision.

A petition for a rehearing was denied July 14, 1988, and appellant's petition for review by the Supreme Court was denied September 15, 1988.