[No. B073693. Second Dist., Div. One. Nov. 18, 1993.]

KATE MICHAELIS et al., Plaintiffs and Respondents, v.
JANET SCHORI et al., Defendants and Appellants.

## COUNSEL

Schmid & Norek, Susan H. Schmid and K. Elizabeth Cronin for Defendants and Appellants.

David Hoffman for Plaintiffs and Respondents.

## OPINION

**ORTEGA, Acting P. J.**—We reverse the trial court's order denying defendant physicians' motion to compel arbitration in a medical malpractice case.

### BACKGROUND

According to plaintiff Kate Michaelis's brief on appeal, she consulted defendant Dr. Janet Schori for medical care related to her pregnancy. She was under the impression Schori would be solely responsible for her care. During her first visit, Michaelis, 17 years old at the time and living with her parents, signed a binding arbitration agreement, also signed by Schori. The pregnancy appeared to progress routinely. When Michaelis went into labor she checked into the hospital after talking to Schori, who told her defendant Dr. Kim Bader would meet her there.

Bader never showed up. According to Michaelis, the hospital staff failed to detect signs of pregnancy-induced hypertension and the baby, otherwise normal, was stillborn. Disaffirming the arbitration agreement, Michaelis and plaintiff Bodie Stroud, the baby's father, sued the hospital, staff, and the two defendant doctors for medical malpractice.

Schori and Bader appeal the trial court's denial of their motion to compel arbitration per the agreement.

### ISSUES

(I) Is a minor entitled to disaffirm such an arbitration agreement? (II) Are plaintiff Stroud and defendant Bader, who didn't sign the agreement, bound by it?

## DISCUSSION

### I

"A basic rule of statutory construction is that two potentially conflicting statutes must be construed whenever possible in such a manner that harmonizes and gives effect to both. [Citations.]" (*Patricia C.* v. *Mark D.* (1993) 12 Cal.App.4th 1211, 1218 [16 Cal.Rptr.2d 71].)

The rule has traditionally been that the "law shields minors from their lack of judgment and experience and under certain conditions vests in them the right to disaffirm their contracts. Although in many instances such disaffirmance may be a hardship upon those who deal with an infant, the right to avoid his contracts is conferred by law upon a minor 'for his protection against his own improvidence and the designs of others.' It is the policy of the law to protect a minor against himself and his indiscretions and immaturity as well as against the machinations of other people and to discourage adults from contracting with an infant. Any loss occasioned by the disaffirmance of a minor's contract might have been avoided by declining to enter into the contract. [Citations.]" (*Niemann* v. *Deverich* (1950) 98 Cal.App.2d 787, 793 [221 P.2d 178].)

But the Legislature decided to make exceptions and enacted several Civil Code[1] provisions dealing with medical care, hospital care, and drug or alcohol abuse treatment. One of those exceptions is contained in section 34.5 which provides, "*Notwithstanding any other provision of law*, an unemancipated minor may give consent to the furnishing of hospital, medical and surgical care related to the prevention or treatment of pregnancy, and that consent shall not be subject to disaffirmance because of minority. The consent of the parent or parents of such minor shall not be necessary in order to authorize the hospital, medical and surgical care."[2] (Italics added.)

"[ ] A minor cannot disaffirm an obligation, otherwise valid, entered into by him under the express authority or direction of a statute." (§ 37.)

"In enacting section 34.5 as a limitation upon a minor's power to disaffirm contracts, the Legislature apparently determined that the public interest in encouraging pregnant minors to seek and doctors to provide medical care related to pregnancy outweighed the public policy designed to protect

---

[1]All statutory references are to the Civil Code unless otherwise indicated.

[2]Several of the sections provide that when a minor enters into a contract for treatment, the parents are not financially liable for the care rendered. (See, e.g., §§ 34.6, 34.7, and 34.10.) But section 34.5 does not contain such a provision, presumably giving the minor the power not only to contract for pregnancy medical services, but to obligate herself and her parents to pay for the care rendered.

minors from their own improvidence. Although no definitive history is available to explain the legislative purpose, it seems evident the Legislature recognized that an unmarried pregnant minor understandably might be reluctant to seek parental consent for medical care related to her pregnancy and that the parents of such a minor might refuse consent for reasons unrelated to the health of the minor." (*Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 880 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392], fn. omitted.)

"In the Civil Code, the Legislature has provided for the medical emancipation of minors . . . by providing them the right to obtain reproductive health care . . . without parental consent . . . ." (*Planned Parenthood Affiliates* v. *Van de Kamp* (1986) 181 Cal.App.3d 245, 269 [226 Cal.Rptr. 361].)

■ The question is whether, notwithstanding the above, Code of Civil Procedure section 1295 (hereafter section 1295) allows disaffirmance if a minor's parent or guardian has not signed the medical contract. Section 1295 deals with "[a]ny contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider" and provides in subdivision (d) that "[w]here the contract is one for medical services to a minor, it shall not be subject to disaffirmance if signed by the minor's parent or legal guardian."[3]

By allowing an unmarried minor to consent to pregnancy medical treatment, the Legislature empowered her to enter into such a contract. Consent to medical treatment today necessarily includes the fundamental questions of remuneration to the provider and the resolution of disputes over the quality of care. The Legislature could not conceivably have attempted with section 34.5 to "encourag[e] pregnant minors to seek and *doctors to provide* medical care related to pregnancy" (*Ballard* v. *Anderson, supra,* 4 Cal.3d at p. 880, italics added) without authorizing the minor to commit herself to these two concepts which are near and dear to medical providers.

Plaintiffs argue that section 1295 is a specific statute dealing with arbitration and thus prevails over the general Civil Code provisions which do not deal with arbitration but only with various forms of medical care in general. We disagree because arbitration, especially since the Medical Injury Compensation Reform Act of 1975, is an integral part of medical contracts. Section 1295 "was enacted in an extra-ordinary session of the Legislature called by the Governor to alleviate the escalating cost of medical malpractice insurance premiums (and resulting problems of health care availability) due

---

[3]Section 1295 controls the form and content of an arbitration provision. No claim is presented that the agreement signed by Michaelis failed to comply with such requirements.

to the surge of medical malpractice actions and high jury awards. [Citations.]" (*Rosenfield* v. *Superior Court* (1983) 143 Cal.App.3d 198, 203 [191 Cal.Rptr. 611].)

The result of the statutory scheme is that section 1295 must be deemed the general statute subject to exceptions carved out in the Civil Code sections dealing with specific types of health care. In any event, Code of Civil Procedure section 1295, subdivision (d) and Civil Code section 34.5 are not necessarily in conflict. Under section 1295, if a parent signs the contract, the minor cannot disaffirm it, no matter the nature of the medical care involved, including pregnancy care. The unstated corollary is that, in general, if the parent does not sign the contract, section 1295, subdivision (d) makes it subject to disaffirmance by the minor. But, by stating only one side of the proposition (parent or guardian signs, minor is bound), section 1295, subdivision (d) by its own terms left open the possibility of exceptions if the parent or guardian does not sign. Thus, if the minor alone has consented to, and thus contracted for, the particular types of medical care set forth in sections 34.5 through 34.10, such "consent shall not be subject to disaffirmance because of minority." (§ 34.5.) By parity of reasoning, if consent may not be disaffirmed, the contract, including an arbitration provision, may not be disaffirmed.

The Civil Code sections deal with the type of treatment a minor might be reluctant to seek were parental approval needed: pregnancy care (§ 34.5), infectious, contagious, or communicable diseases (§ 34.7), treatment for rape (§ 34.8) or sexual assault (§ 34.9), and drug or alcohol treatment (§ 34.10). A minor seeking treatment for a broken leg or leukemia is ordinarily not going to be reluctant to bring a parent into the picture. But, as stated by defendants, "[i]f minors seeking pregnancy-related care are prevented from entering into binding arbitration agreements, it is conceivable that physicians and medical groups will refuse to render medical services unless a parent or guardian signs. This in turn would seriously hamper a minor's ability to freely choose from whom she wishes to receive prenatal care. A minor faced with having to obtain the signature of a parent or legal guardian for an arbitration agreement may for[ ]go prenatal care from a physician or medical group she trusts because her parent or legal guardian would be involved. Such a restriction on the rights of minors to obtain prenatal health care treatment could not be what the Legislature envisioned or intended by enacting [section] 1295[, subdivision] (d)."[4]

We hold that section 34.5 precludes an unemancipated minor from disaffirming a section 1295 arbitration provision entered into as part of a contract

---

[4]We also reject any notion that Michaelis is not bound by the arbitration agreement because she did not realize what she was signing. She made that claim in a declaration presented to the trial court. By the terms of section 1295, subdivision (e), such an arbitration agreement is not a contract of adhesion. "Since the agreement here is not one of adhesion, the general rule, that

for hospital, medical, or surgical care related to the prevention or treatment of pregnancy.

## II

■ The next question is whether the arbitration agreement, although not signed by defendant Bader or plaintiff Stroud, nevertheless covers them.[5] We find that it does. The agreement, signed by defendant Schori and plaintiff Michaelis, provides that "[a]ll claims for monetary damages exceeding the jurisdictional limit of the small claims court against the physician, and the physician's partners, associates, association, corporation or partnership, and the employees, agents and estates of any of them, must be arbitrated . . . ." This clause sufficiently encompasses Bader as an employee or associate. (See *Gross* v. *Recabaren* (1988) 206 Cal.App.3d 771, 777, fn. 2 [253 Cal.Rptr. 820], and *Harris* v. *Superior Court* (1986) 188 Cal.App.3d 475, 478 [233 Cal.Rptr. 186].)

■ As for Stroud, the agreement provided, per section 1295, for the arbitration of "any dispute as to medical malpractice," and contained a clause identical to that in *Bolanos* v. *Khalatian, supra,* 231 Cal.App.3d at page 1591: " '. . . All Claims Must be Arbitrated: It is the intention of the parties that this agreement *bind all parties* whose claims may arise out of or relate to treatment or services provided by the physician including any spouse or heirs of the patient and any children, whether born or unborn, at the time of the occurrence giving rise to any claim. In the case of any pregnant mother, the term "patient" herein shall mean both the mother and the mother's expected child or children.' " (Italics added.) The *Bolanos* court held that the arbitration agreement bound third party nonsignatories. Quoting from *Gross* v. *Recabaren, supra,* 206 Cal.App.3d at page 781, the *Bolanos* court held that " '. . . where, as here, a patient expressly contracts to submit to arbitration "any dispute as to medical malpractice," and that agreement fully complies with Code of Civil Procedure section 1295, it must be deemed to apply to *all* medical malpractice claims arising out of the services contracted for, regardless of whether they are asserted by the patient or a third party.' " (*Bolanos* v. *Khalatian, supra,* 231 Cal.App.3d at p. 1591.)

one who signs an agreement cannot avoid its terms on the ground that he failed to read it, is applicable. [Citations.]" (*Bolanos* v. *Khalatian* (1991) 231 Cal.App.3d 1586, 1590 [283 Cal.Rptr. 209].)

[5]The hospital and involved nurses are not parties to this appeal. We do not decide whether the arbitration agreement covered them. Another issue has not been briefed nor, according to the record provided on appeal, was it litigated below: If the hospital and/or nurses were not covered by the arbitration agreement and demanded a trial, could the trial court, in the interest of judicial economy, force those parties covered by the arbitration agreement into a trial? (See *C. V. Starr & Co.* v. *Boston Reinsurance Corp.* (1987) 190 Cal.App.3d 1637 [236 Cal.Rptr. 167].) Although an affirmative answer would seem to be a direct contravention of the intent of the Medicial Injury Compensation Reform Act of 1975, we leave the issue for another day.

## DISPOSITION

The order denying the petition to compel arbitration is reversed. The matter is remanded with directions to enter an order granting the petition.

The parties are to bear their own costs on appeal.

Vogel (Miriam A.), J., and Masterson, J., concurred.

Respondents' petition for review by the Supreme Court was denied February 3, 1994. Mosk, J., and George J., were of the opinion that the petition should be granted.