[No. A093757. First Dist., Div. One. May 8, 2002.]

JACK ZAKARIAN et al., Plaintiffs and Respondents, v.
GEORGE BEKOV et al., Defendants and Appellants.

**COUNSEL**

Law Offices of James Farinaro and James Farinaro for Plaintiffs and Respondents.

Law Offices of Robert B. Zaro, Robert B. Zaro and Stephen L. Ramazzini for Defendants and Appellants.

**OPINION**

**MARCHIANO, P. J.**—George Bekov, William Ellis, M.D., and the Ellis Eye and Laser Center of Northern California appeal from an order denying their motion to compel arbitration, arguing that the terms of the arbitration agreement expressly apply to joinder of parties such as Bekov, who are necessary for a complete settlement of the dispute. We reverse the order and direct the trial court to refer the issue of Bekov's joinder in the arbitration to the arbitrator.

### BACKGROUND

The facts of this case arise out of circumstances that are closely related to a previous appeal in *Chou v. Ellis* (July 26, 2000, A088607) (nonpub. opn.) (*Chou*). In the previous case, plaintiffs Ching-Hua Chou and Long Hoang filed a class action complaint against Dr. William Ellis for damages arising out of laser eye surgery allegedly performed by Dr. Ellis with unapproved illegally imported ophthalmic lasers. In that case, we reversed the trial court's denial of Dr. Ellis's request to arbitrate the dispute because the allegations of the complaint arose out of the furnishing of professional services within the broad scope of the agreement to arbitrate pursuant to *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066 [90 Cal.Rptr.2d 334, 988 P.2d 67].

This complaint, also cast as a class action, was first filed while the appeal was pending in *Chou*. There are several named plaintiffs including Long

Hoang, who was also a plaintiff in *Chou*. Defendants are Dr. Ellis, his laser eye center corporation, and George Bekov, doing business as Spectrum International, who was employed by Dr. Ellis to service the ophthalmic lasers. As the following description will show, the two actions involve intertwined and related issues arising out of laser eye surgery performed by Dr. Ellis.

The complaint in *Chou*, filed by the same attorney who represents plaintiffs in the second case, named only Dr. Ellis and his company as defendants. The plaintiff class identified in *Chou* included all persons that Dr. Ellis had performed refractive eye surgery on using certain excimer lasers.

The general allegations in the *Chou* complaint stated that Dr. Ellis advertised laser eye surgery procedures and performed those procedures on plaintiffs using specifically described ophthalmic lasers manufactured by Summit Technology and misrepresented that the lasers were approved medical devices.

The *Chou* complaint alleged violations of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200) and the Consumers Legal Remedies Act (CLRA) (Civ. Code, §§ 1770, 1781) consisting of performing laser eye surgery on plaintiffs using ophthalmic lasers that were not approved by the federal Food and Drug Administration, contrary to representations made to plaintiffs and which rendered the lasers "adulterated device[s]" within the provisions of federal law. The *Chou* complaint requested damages as well as injunctive relief, disgorgement of profits, restitution, and punitive damages.

The first amended complaint in this action added Bekov as a defendant in seven of the eight causes of action. Like *Chou,* the plaintiff class here is described as including all persons that Dr. Ellis had performed refractive eye surgery on using certain excimer lasers. It added a class of Dr. Ellis's patients who had received refractive eye surgery using excimer lasers that Bekov had maintained. It also alleged that Dr. Ellis maintains offices in various cities where he advertised and performed laser eye surgery on plaintiffs using excimer lasers manufactured by Summit Technology. Ellis employed Bekov as an independent contractor to "service, maintain, repair and calibrate excimer lasers used by defendant Ellis to perform refractive eye surgery on plaintiffs and class members." Bekov negligently serviced, maintained, repaired or calibrated the lasers in a manner that injured plaintiffs. Bekov violated provisions of the Business and Professions Code because he used the titles "professional engineer, consulting engineer, electrical engineer or combinations of these words" without having a license from the Board for Professional Engineers. The complaint echoes the first cause

of action in the *Chou* complaint by alleging that "defendants knowingly . . . serviced, maintained, repaired, altered and calibrated the excimer lasers . . . so that the excimer lasers were adulterated medical devices in violation of the Federal Food Drug and Cosmetics Act . . . ."

The complaint also alleged that Ellis and Bekov committed violations of the UCL and CLRA and other statutes by falsely representing that they were registered engineers. Plaintiffs alleged that Bekov "participated" in the fraud committed by Ellis.[1] Plaintiffs also accused Bekov of aiding and abetting Ellis in defrauding Dr. Ellis's eye surgery patients. The complaint requested injunctive relief and/or damages.

Plaintiffs in this case and in *Chou* executed a "Patient - Physician Arbitration Agreement" in accordance with the provisions of Code of Civil Procedure section 1295. The particular contract used in all cases provided, in relevant part, as follows: "It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration . . . ." The agreement applied to: "any and all claims involving persons bound by this Agreement whether those claims are brought in tort, contract or otherwise." The agreement specified that it applied to: "claims against the physician and any consenting substitute physician, as well as his/her partnership, professional corporation, employees, partners, heirs, assigns or personal representatives."

Most important to the resolution of this appeal is the statement: "I also hereby consent to the intervention or joinder in the arbitration proceeding of all parties relevant to a full and complete settlement of any dispute arbitrated under this Agreement, as set forth in the Medical Arbitration Rules and/or CHA-CMA Rules for the Arbitration of Hospital and Medical Fee Disputes."[2]

After our decision reversing the denial of arbitration in *Chou*, Ellis and Bekov filed a motion to compel arbitration and consolidate this action with

---

[1]There is no indication that Bekov made any representations directly to plaintiffs or had any contact with plaintiffs.

[2]The agreement also states in capital letters: "I agree to accept medical services from the undersigned physician and to pay therefor. I UNDERSTAND THAT I DO NOT HAVE TO SIGN THIS AGREEMENT TO RECEIVE THE PHYSICIAN'S SERVICES, AND THAT IF I DO SIGN THE AGREEMENT AND CHANGE MY MIND WITHIN 30 DAYS OF TODAY, THEN I MAY REVOKE THIS AGREEMENT BY GIVING WRITTEN NOTICE TO THE UNDERSIGNED PHYSICIAN WITHIN THAT [SAME] TIME STATING THAT I WANT TO WITHDRAW FROM THIS ARBITRATION AGREEMENT. I further understand that after those 30 days, this Agreement may be changed or revoked only by a written revocation signed by both parties."

*Chou.* On November 22, 2000, the trial court denied the request for consolidation.[3] The court granted the motion to compel arbitration as to Ellis alone. It denied arbitration of all issues relating to Bekov and of all causes of action for injunctive relief.[4] On January 16, 2001, Dr. Ellis and Bekov appealed from the November 22 order denying the motion to compel arbitration.[5]

## DISCUSSION

Dr. Ellis and Bekov argue that the express terms of the arbitration agreement contemplated joinder of parties such as Bekov, to ensure a complete settlement of disputes subject to the agreement. They also argue that the trial court erred in failing to clarify that the arbitrator should decide the substantive merits of the claims seeking injunctive relief and that the court improperly refused to consolidate the actions.

Respondents challenge two of those contentions, reasoning that Bekov was not a signatory to the arbitration agreements and therefore cannot compel arbitration. Respondents contend that appellants' request that we order the arbitrator to determine the merits of the injunctive relief claims is premature and not raised in the proceedings below. Respondents, however, join in appellants' request for reversal of the order denying consolidation.

We agree with respondents that it is not appropriate to order arbitration of the merits of the dispute with Bekov. But respondents, as parties to the arbitration agreement, cannot prevent Dr. Ellis, another party to the agreement, from obtaining arbitration of the issue of whether or not Bekov's presence is "relevant to a full and complete settlement of any dispute" within the subject matter of the arbitration agreement. The terms of the arbitration agreement reflect that the parties agreed that the arbitrator, not the court, shall determine issues of joinder and intervention. We will reverse the order denying the motion to compel arbitration and direct that the issues of joinder or intervention be referred to arbitration. We agree with respondents' view of the issue regarding the substantive merits of the injunctive relief causes of action and will take no action on that request. We also reverse the order denying consolidation.

---

[3]The court did not state its reasoning for this order. During oral argument of the motion, the court stated that it intended to consolidate the injunctive relief causes of action.

[4]In a later order, prompted by appellants' request for reconsideration, the court granted appellants' request for a stay of the litigation pending completion of arbitration proceedings. The court retained jurisdiction over any class certification aspects of the case and any motions for provisional relief.

[5]An order denying a motion seeking to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).)

*Scope of Arbitration Depends on the Agreement of the Parties*

In our previous opinion in *Chou,* we determined that the scope of the arbitration agreement between Dr. Ellis and his patients included all of the allegations in that complaint regarding the improper, incompetent, negligent, or unauthorized rendering of professional services as well as "any and all claims" between Dr. Ellis and his patients. (*Chou, supra,* A088607.) Respondents have not disputed, for purposes of this appeal, that the subject matter of the Zakarian complaint also arises out of the furnishing of medical services and is within the scope of the arbitration agreement. Respondents' sole objection to arbitration is that Bekov was neither a signatory to nor a third party beneficiary of the arbitration agreements.

■ The heart of the arbitration process is the agreement of the parties to forgo resort to the courts and elect the alternative process of arbitration to resolve specified disputes. "Arbitration is consensual in nature. The fundamental assumption of arbitration is that it may be invoked as an alternative to the settlement of disputes by means other than the judicial process solely because all parties have chosen to arbitrate them. [Citations.]" (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 244-245 [54 Cal.Rptr.2d 628] (*County of Contra Costa*).)

■ Respondents rely primarily on *County of Contra Costa, supra,* 47 Cal.App.4th 237, to argue that Bekov was an independent contractor, not an employee or agent of Ellis, and is not entitled to compel arbitration.[6] However, *County of Contra Costa* involved significantly different circumstances. In that case, Kaiser sought to arbitrate claims of strangers who had no relationship with either party to the arbitration agreement. In this case, Bekov has a prior relationship with Dr. Ellis and was allegedly involved in the same alleged acts of malfeasance. Also, in *County of Contra Costa,* the nonsignatories were resisting arbitration, while in this case, it is signatories who are seeking to avoid arbitration. Finally, the agreement in this case commits the very decision of whether joinder or intervention is appropriate to arbitration. The considerations that influenced the court in *County of*

---

[6]As the court noted in *County of Contra Costa, supra,* 47 Cal.App.4th 237, the cases that have found nonsignatories obligated to arbitrate generally involve either a preexisting relationship between one party and the nonsignatory that makes it equitable to bind the nonsignatory, or a situation in which the nonsignatory is a third party beneficiary to the contract. (*Id.* at p. 242; see, e.g., *Michaelis v. Schori* (1993) 20 Cal.App.4th 133 [24 Cal.Rptr.2d 380]; *Keller Construction Co. v. Kashani* (1990) 220 Cal.App.3d 222, 225-228 [269 Cal.Rptr. 259].) Generally, when the nonsignatory has no relationship with a party to the agreement, the nonsignatory is not forced to arbitrate. (See, e.g., *Hollister v. Benzl* (1999) 71 Cal.App.4th 582, 587 [83 Cal.Rptr.2d 903] [independent contractor physician not bound by contract between his medical group and plaintiff's health plan].) No case has discussed an arbitration agreement containing a joinder provision such as the one in this case.

*Contra Costa,* regarding the constitutional and procedural rights of those who have not agreed to arbitrate, are not present here.

The critical and distinguishing fact in this case is Dr. Ellis's desire to bring in a willing third party according to the terms of his agreements with his patients. If the arbitration agreement encompasses the issue of joinder of a nonobjecting third party, respondents, who have agreed to that term, cannot resist arbitration on the ground that the third party did not sign the agreement. (See, e.g., *Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1319 [231 Cal.Rptr. 315] [summarily rejecting plaintiff's attempt to avoid arbitration because defendants were not signatories].)

*Respondents Agreed to Joinder of Third Parties in the Arbitration Process*

The critical portion of the contract between Dr. Ellis and his patients is the last sentence of paragraph three, which states: "I also hereby consent to the intervention or joinder in the arbitration proceeding of all parties relevant to a full and complete settlement of any dispute arbitrated under this Agreement, as set forth in the Medical Arbitration Rules and/or CHA-CMA Rules for the Arbitration of Hospital and Medical Fee Disputes."[7]

We requested supplemental briefs on the content and effect of the California Hospital Association and California Medical Association Rules for the Arbitration of Hospital and Medical Fee Disputes that are incorporated by reference in the arbitration agreement (CHA-CMA Rules). ■ "[P]arties may identify the arbitrable claims indirectly by choosing a body of private arbitration rules that specifies the scope of arbitrable claims. In doing so, they incorporate by reference the claims limitations determined by those rules."[8] (*Broughton v. Cigna Healthplans, supra,* 21 Cal.4th 1066, 1106 (dis. opn. of Kennard, J.).)

---

[7]The explicit language agreeing to the joinder or intervention by third parties in this case contrasts with language in other contracts that expressly precluded such a result. (See, e.g., *Garden Grove Community Church v. Pittsburgh-Des Moines Steel Co.* (1983) 140 Cal.App.3d 251, 264 [191 Cal.Rptr. 15], where the contract specifically stated: " '[N]o arbitration arising out of, or relating to this agreement, shall include, by consolidation, joinder or in any other manner, *any additional party* not a party to this agreement except by written consent containing a specific reference to this agreement and signed by all the parties hereto. Any consent to arbitration involving an additional party or parties shall not constitute consent to arbitration of any dispute not described therein or with any party not named or described therein. . . .' ")

[8]We also requested the parties to furnish the applicable version of the CHA-CMA Rules, which they have done. The parties have agreed on the content and form of the applicable rules, and that they are incorporated by reference in the arbitration agreement. We, therefore, take judicial notice of the rules pursuant to Evidence Code sections 452, subdivision (h) and 459, subdivision (d). (*Easton v. Strassburger* (1984) 152 Cal.App.3d 90, 101, fn. 5 [199 Cal.Rptr. 383, 46 A.L.R.4th 521].)

In response, the parties supplied an agreed-upon version of the CHA-CMA Rules, as incorporated in their agreement. Rule 8 of the CHA-CMA Rules states: "All claims based upon the same incident, transaction or related circumstances shall be arbitrated in one proceeding." Rule 9, concerning intervention and joinder provides: "Prior to the date set for the arbitration hearing, any person . . . whose participation is considered by the neutral arbitrator to be material or relevant to a complete resolution of the dispute may intervene in the arbitration. Similarly, any party to the arbitration may make a written request that additional persons . . . be joined in the arbitration. If the neutral arbitrator considers the participation of the requested new party to be material or relevant to a complete resolution of the dispute, then the request shall be approved. . . . All parties to the arbitration are deemed to have consented to the joinder or intervention of any person when the joinder or intervention is allowed pursuant to this rule. . . . All parties agree to stay any judicial proceeding against the new party which arises out of the same transaction or occurrence."[9]

In *Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 480 [121 Cal.Rptr. 477, 535 P.2d 341], the court held: "The performance of [the superior court's duty to decide whether issues must be arbitrated] necessarily requires the court to examine and, to a limited extent, construe the underlying agreement. [¶] It is, of course, possible for the parties to agree that the arbitrator may determine the scope of his authority. 'The arbitrability of a dispute may itself be subject to arbitration if the parties have so provided in their contract.' [Citation.] Even then, it is necessary for the court to examine the contract to ascertain whether the parties 'have so provided.' [Citations.]"

 On examination of the complaint and the entire contract, including matters incorporated by reference, it becomes obvious that the parties here have "so provided" that the issue of whether Bekov may intervene or be joined in the arbitration proceeding is to be determined by the arbitrator. The subject matter of the Zakarian complaint involves misrepresentations regarding engineering credentials and improper maintenance and use of the excimer lasers by Dr. Ellis in performing respondents' eye surgeries. Respondents describe a webbed relationship between Ellis and Bekov, alleging that Bekov aided and abetted Ellis and was an integral part of the misrepresentations and wrongful acts allegedly committed by Dr. Ellis; and that Bekov made misrepresentations to Dr. Ellis that were apparently passed along to the patients.

---

[9]CHA-CMA rule 9 also states: "This rule is to be liberally construed in favor of allowing intervention and joinder and in favor of promoting arbitration as the primary and final means of resolving disputes." It provides for a procedure for notice to the other parties, and consent by the third person, who is offered the opportunity to sign the arbitration agreement and thereby agree to be bound.

The allegations of entanglement between Bekov and Ellis bring the case against Bekov well within the scope of the language of the agreement regarding arbitration of questions of joinder of parties relevant to a full settlement of an arbitrated dispute. By denying the motion to compel arbitration, the court did not give effect to the role that the parties had contractually reserved to the arbitrator.[10] The plain language of the arbitration agreement requires reversal of the order denying appellants' motion to compel arbitration of the arbitrable claims as to Bekov.

Respondents, while acknowledging the language of the CHA-CMA Rules, argue that because appellants have not yet applied to the arbitrator for intervention and/or joinder, the denial of appellants' motion to compel arbitration must be affirmed. However, once respondents brought the dispute framed by the complaint in this case in superior court, appellants had no choice but to ask that court to refer the issue to arbitration in accordance with the terms of their contract.

*Referring Issue of Joinder to Arbitration Serves the Policies Favoring Arbitration*

■ Arbitration is "an accepted and favored method of resolving disputes." (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706 [131 Cal.Rptr. 882, 552 P.2d 1178].) Through enactment of a statutory scheme regarding arbitration in the Code of Civil Procedure, the Legislature has "expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.]" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) This policy encourages those who wish to avoid delay in the resolution of disputes to submit their disputes to an alternative forum. (3 Cal.4th at p. 10.) "Arbitration has also been favored because of its curative impact on crowded court dockets. [Citation.]" (*Crowell v. Downey Community Hospital Foundation* (2002) 95 Cal.App.4th 730, 752 [115 Cal.Rptr.2d 810] (dis. opn. of Nott, J.); *County of Contra Costa, supra,* 47 Cal.App.4th at p. 244.)

■ Our decision here merely enforces the terms of an arbitration agreement. We are not forcing an unwilling nonsignatory to submit to arbitration. (*E.I. DuPont de Nemours v. Rhone Poulenc Fiber* (3d Cir. 2001) 269 F.3d 187, 201-202 [discussing distinction between cases estopping a signatory from avoiding arbitration and forcing a nonsignatory to arbitrate].) In this case, Bekov, by seeking arbitration, has waived any objection he may have asserted, and will be bound as are the actual parties. (*NORCAL Mutual*

---

[10]In fairness to the trial court, the parties did not make the actual terms of their agreement, including the text of the incorporated CHA-CMA Rules, clear to that court.

*Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 81 [100 Cal.Rptr.2d 683]; *Lovret v. Seyfarth* (1972) 22 Cal.App.3d 841, 859-860 [101 Cal.Rptr. 143].) In any event, the CHA-CMA Rules provide a mechanism for securing Bekov's consent to which both Ellis and respondents agreed.

There is no need to consider the rights of respondents to have their disputes determined by a jury. Respondents here have already agreed, by the terms of their contract, to submit the issue of joinder or intervention to arbitration. All of the policies favoring arbitration are served by our decision and there are no countervailing interests weighing against arbitration.[11]

*Consolidation Is Appropriate*

In their motion to compel arbitration, appellants also requested consolidation of the arbitrable claims in this case and the *Chou* case, and consolidation of the nonarbitrable claims in the two cases. It appears undisputed that the two cases are in the same stages of preparation and involve substantially the same issues. (Code Civ. Proc., § 1048 [providing for consolidation where actions involve common questions of law or fact to avoid unnecessary costs or delay].)

At argument of the motions before the trial court, counsel for respondents represented that respondents did not oppose consolidation. The court appeared to agree with the parties that at least the injunctive relief claims that were not sent to arbitration would be consolidated. On appeal, respondents join appellants in requesting reversal of the order denying consolidation of this action with *Chou*. In light of the agreement of the parties and because there is no apparent reason supporting the court's refusal to consolidate these essentially identical cases, and in interests of judicial economy, we will reverse the court's order on the issue of consolidating the injunctive relief cases.

By the terms of the arbitration agreement, the parties have agreed to apply to the arbitrator regarding consolidation of the cases that are being arbitrated. It does not appear that they have done so, and we will not usurp the arbitrator's contractual authority to rule on that issue pursuant to the CHA-CMA Rules. The issue of consolidation of any cases to be arbitrated is left for decision by the arbitrator.

---

[11]We decline to take any action on appellants' request to "clarify" the court's order and direct the arbitrator to decide certain issues regarding the injunctive claims and to delimit the superior court's subsequent role in ruling on the injunctive relief claims. It is not clear that this issue was raised below, it is not mentioned in respondents' motion for reconsideration, and in any event, since the arbitration has not begun, a decision on this point would be premature.

## CONCLUSION

The superior court's order of November 22, 2000, regarding the denial of the motion to compel arbitration of the arbitrable claims as to Bekov, is reversed with directions that the court enter a new order referring the issue of Bekov's joinder or intervention in the arbitration to the arbitrator.[12] The order is also reversed as to the denial of consolidation of cases No. 313149 and No. 301827 in the superior court. In all other respects, the order is affirmed. Appellants are entitled to costs on appeal.

Stein, J., and Swager, J., concurred.

---

[12]In *Arriaga v. Cross Country Bank* (S.D.Cal. 2001) 163 F.Supp.2d 1189, 1199-1200, the federal district court, relying on United States Supreme Court precedent, found that public injunctive relief under Business and Professions Code section 17200 was subject to arbitration when the contract itself was subject to the Federal Arbitration Act (FAA) (9 U.S.C. § 3). No evidence has been produced so far to indicate whether the contract was subject to the FAA.