Filed 10/28/14  Pelter v. 1-800-GET-THIN, LLC CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| MICHELE PELTER, Individually and as Special Administrator, etc.,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>1-800-GET-THIN, LLC, et al.,<br><br>Defendants and Appellants. | B250124<br><br>(Los Angeles County<br>Super. Ct. No. BC491048) |

APPEAL from an order of the Superior Court of Los Angeles County, Samantha P. Jessner, Judge.  Affirmed.

Prindle, Amaro, Goetz, Hillyard, Barnes & Reinholtz, Jack R. Reinholtz and Douglas S. de Heras for Defendants and Appellants.

Walker, Hamilton & Koenig, Timothy M. Hamilton and Beau R. Burbidge for Plaintiff and Respondent.

_____

Michele Pelter filed a complaint alleging medical malpractice and other causes of action related to the death of her sister after lap band surgery. The trial court denied the defendants' motion to compel arbitration and they appeal. We affirm.

Pelter filed the complaint on September 7, 2012, individually and as special administrator of the estate of her sister, Paula Rojeski, against 1-800-GET-THIN, LLC; Valley Surgical Center; Julian Omidi, Michael Omidi, M.D., and Cindy Omidi, doing business as Valley Surgical Center; and three physicians. The complaint alleges that Rojeski died on September 8, 2011 as a result of the defendants' negligence in performing lap band surgery, and included claims of breach of medical professional obligation, wrongful death, and fraud and concealment. Defendants 1-800-GET-THIN, Valley Surgical Center, and Julian, Michael, and Cindy Omidi (defendants) filed a petition to compel arbitration on April 24, 2013, attaching three arbitration agreements dated May 18, 2011, June 4, 2011, and September 18, 2011 (the day of Rojeski's death). Only the May 18, 2011 agreement is in issue on this appeal. The defendants alleged they were "contracting parties and/or third party beneficiaries and/or alleged agents."

A declaration by Roberto Macatangay states that he is the Chief Executive Officer of Valley Surgical Center and Beverly Hills Surgery Center (which is not a party to this lawsuit), and that the general custom and practice of Valley Surgical Center is to offer all patients the opportunity to sign an arbitration agreement, which if signed is retained by a custodian of records in the ordinary course of business, with a copy provided to the patient. Before Valley Surgical Center rendered medical services to Rojeski, she signed the three agreements, including the May 18, 2011 agreement, a true and correct copy of which was attached.

The one-page generic agreement, entitled only "PHYSICIAN-PATIENT ARBITRATION AGREEMENT," provides that both parties agree to arbitrate any medical malpractice dispute. "Paula Rojeski" in handwriting appears on the signature line for "Patient's or Patient Representative's Signature," her name is hand-printed below, and the initials "P.R." appear as "Patient's or Patient Representative's Initials." The handwritten date next to the signature line is May 18, 2011. There is no signature on

2

the line for "Physician's or Authorized Representative's Signature." Nothing in the agreement refers to any of the defendants or to lap-band surgery, or identifies the agreement as pertaining to any specific individual or entity.

Pelter opposed the petition, arguing that the agreement was unenforceable as only Rojeski allegedly signed it, Macatangay's declaration lacked foundation and personal knowledge, and the agreement was unauthenticated and inadmissible. Defendants replied that they could enforce the agreement as "NON-SIGNATORY BENEFICIARIES," and arbitration was required against all defendants as all the causes of action were "intertwined."

After hearing, the trial court found that Macatangay's declaration failed to establish the required foundation and authentication of the May 18, 2011 agreement, and "defendants have failed to carry their burden of showing that an arbitration agreement exists." Further, the agreement was signed only by Rojeski, leaving the court with no evidence "that identifies who or which entity intended to enter into the agreement with the decedent [or] with whom she thought she was contracting." The blank signature line was for a physician or authorized representative, and there was no evidence that any of the moving parties was Rojeski's physician, an authorized representative, or an intended beneficiary of the agreement. (Defendant Michael Omidi, M.D. signed a declaration stating that Rojeski was never his patient.) The court denied the petition to compel arbitration on July 9, 2013, and this timely appeal followed.

The defendants have not established that they were parties to an arbitration agreement or otherwise entitled to enforce one. We review de novo whether an arbitration agreement applies to a controversy, if (as here) there was no conflicting extrinsic evidence in the trial court. (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 12.) The petitioner seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that a valid arbitration agreement exists, and a nonsignatory must also establish that he or she is a party to the agreement. (*Id.* at p. 15.) An arbitration agreement may be enforced by nonsignatories in limited circumstances, such as when the nonsignatory is a third party beneficiary of the agreement, and when a

3

preexisting agency relationship makes it fair to allow the nonsignatory to impose the duty to arbitrate. (*Id.* at pp. 17–18.)

The defendants maintaining this appeal did not establish that they were parties to the May 18, 2011 agreement. First, none is a signatory. No one signed the agreement except Rojeski. The blank signature line is for a "Physician's or Authorized Representative's Signature." Second, the defendants did not establish that any of them may enforce the agreement as a third party beneficiary or under an agency relationship, nor could they on this record, as there is no evidence identifying the person or entity with whom Rojeski allegedly contracted. This is unlike *Michaelis v. Schori* (1993) 20 Cal.App.4th 133, 139, which found that an arbitration agreement that had been signed by the patient and her physician covered another physician as an employee or associate.

As the defendants did not establish the existence of a valid agreement to arbitrate to which they were parties, or that as nonsignatories they were entitled to enforce any agreement, the trial court properly denied the petition to compel arbitration.

## DISPOSITION

The order denying defendants' motion to compel arbitration is affirmed. Respondent is awarded her costs on appeal.

NOT TO BE PUBLISHED.


                                                        JOHNSON, J.


We concur:


        ROTHSCHILD, P. J.


        CHANEY, J.


4