Filed 3/18/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ERIKA WRIGHT et al., | C105070 |
| Plaintiffs and Respondents, | (Super. Ct. No. 25CV014386) |
| v. | |
| WELLQUEST ELK GROVE, LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge.  Affirmed.

Gordon Rees Scully Mansukhani, Lindsey M. Romano, Lia S. Hsu and David K. Ries for Defendants and Appellants.

Dudensing Law, Edward P. Dudensing, Jay P. Renneisen and Matthew M. Chisholm for Plaintiffs and Respondents.


     This action arises from the death of a patient, Kathleen Charles, while she was under the care of a memory care facility, WellQuest Elk Grove, LLC (WellQuest).  When

Kathleen's family filed a lawsuit against the facility, the trial court denied WellQuest's motion to stay proceedings and compel arbitration.[1]  The court ruled that plaintiffs' own claims were not arbitrable because they were brought by plaintiffs in their individual capacities, and plaintiffs were not parties to the agreement.  As to Kathleen's survivor claims, the court exercised its discretion under Code of Civil Procedure section 1281.2, subdivision (c), and declined to compel arbitration, finding "there is a possibility of conflicting rulings on a common issue of law or fact."

On appeal, WellQuest contends the trial court erred in finding the delegation clause did not unmistakably assign the issue of arbitrability to the arbitrator and erred by invoking Code of Civil Procedure section 1281.2, subdivision (c), because the arbitration agreement expressly selected the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) as the relevant provisions for enforcing the agreement.  We disagree and thus affirm.

## LEGAL AND FACTUAL BACKGROUND

We derive the following factual background from the allegations of the complaint. Kathleen was diagnosed with dementia, but was generally in good health, when her family decided to move her into the memory care wing of WellQuest.  Kathleen's family told staff that Kathleen was a "wanderer" and needed to be monitored or she would try to leave the facility.  WellQuest noted in their service plan that Kathleen required "frequent supervision and oversight."  Three days after her admission, Kathleen was found sitting in a courtyard in the direct sun, unresponsive and unattended.  The temperature that day was 102 degrees.  Kathleen had burns over 23 to 25 percent of her body, her internal temperature was around 105 degrees, and she persisted in a comatose state before she died four days later.

---

[1]     The lawsuit was filed on behalf of Kathleen Charles, by and through her successor in interest, Erika Wright and by Erika Wright, Raymond Gregory Charles, and Thomas Wright, individually (collectively, plaintiffs).

Eight months after Kathleen's death, plaintiffs filed a lawsuit against WellQuest. On behalf of Kathleen, plaintiffs alleged WellQuest committed elder neglect, negligence, fraud, and tort per se (Pen. Code, § 368).[2] Her brother Raymond, niece Erika, and nephew Thomas also alleged wrongful death and negligent infliction of emotional distress.

WellQuest moved to stay the proceedings and compel arbitration pursuant to an agreement Erika signed on Kathleen's behalf upon her admission to WellQuest.[3] The arbitration agreement provides, in relevant part:

"a. <u>Agreement to Arbitrate</u>. . . . by signing below, and in consideration of the parties' mutual agreement to arbitrate, the parties agree that if informal resolution is not possible, any and all claims or disputes arising from or related to this Agreement or to your rights, obligations, care, or services at WellQuest of Elk Grove shall be resolved by submission to neutral, binding arbitration in accordance with the Federal Arbitration Act. This agreement to arbitrate applies regardless of whether the claim is made against us, you, or any other individual or entity, and it includes, without limitation, personal injury and wrongful death claims.  If the Federal Arbitration Act does not permit arbitration in accordance with this . . . , then the matter shall be arbitrated in accordance with State law.

"b. <u>Claims Not Subject to Arbitration</u>.  Any . . . issues that cannot be arbitrated as a matter of law shall not be subject to arbitration.  In addition, to the extent required by law, claims involving your rights or obligations as a tenant, if any, shall not be subject to arbitration consistent with Civil Code section 1953(a)(4).

---

[2]    These are known as survivor claims, i.e., claims for relief that belonged to her, are based on her legal rights, survived her death, and passed to her successors in interest. (*Hearden v. Windsor Redding Care Center, LLC* (2024) 103 Cal.App.5th 1010, 1017.)

[3]    Attached to the arbitration agreement was a durable power of attorney for Kathleen's health care, allowing Erika to serve as an agent.  The parties do not dispute Erika had the authority to sign the agreement on Kathleen's behalf.

"c. <u>Claims Subject to Arbitration</u>.  Unless excluded under [this] Section . . . of this agreement, all claims relating to this Agreement or to your rights or obligations at WellQuest of Elk Grove, including but not limited to claims involving the provision of care or services, shall be subject to arbitration.  The parties agree that an arbitrator will decide any question about whether a claim or dispute must be arbitrated under this Section . . . . [¶] . . . [¶]

"j. **<u>Acknowledgment; Signatures</u>.  By signing below, the parties warrant that they understand the significance of this Section . . . and voluntarily agree to be bound by it.  You further acknowledge that agreeing to arbitration is not a condition of admission to WellQuest of Elk Grove.**"

The agreement also provided that "arbitration shall be administered by the Judicial Arbitration and Mediation Services ('JAMS')" but that if an arbitrator is unable to administer in accordance with the terms of this section, the parties shall select an arbitrator "in accordance with the Federal Arbitration Act."

Based on the language noting that all claims arising from Kathleen's rights, obligations, or care at WellQuest "shall be resolved by submission to neutral, binding arbitration *in accordance with the Federal Arbitration Act*" (italics added), WellQuest argued that the provisions of the FAA applied to the arbitration and mandated a stay of litigation until arbitration was completed in accordance with the terms of the agreement.

WellQuest also argued that, based on language in the agreement, any question as to whether a claim could be arbitrated must be settled by the arbitrator, not the court, and there were no grounds for revocation of the arbitration agreement.

Plaintiffs opposed the motion to compel on multiple grounds.  First, they contended that the arbitration agreement did not apply because the agreement exempted claims pursuant to Kathleen's rights as a tenant in WellQuest's facility.  Plaintiffs asserted that the arbitration agreement was both procedurally and substantively unconscionable under California law and was obtained through misrepresentation.

Plaintiffs further argued the motion to compel arbitration should be denied pursuant to Code of Civil procedure section 1281.2, subdivision (c),[4] to prevent inconsistent rulings on issues of law, and the FAA does not preempt section 1281.2. Finally, they contended that Kathleen's brother Raymond's right to trial preference pursuant to section 36 was mandatory and would override any right to arbitration.

The trial court denied the motion to compel arbitration. Although it found that WellQuest demonstrated the existence of a valid arbitration agreement, it disagreed that the threshold issues of arbitrability including issues of unconscionability or enforceability of the arbitration agreement were "clearly and unmistakably" delegated to the arbitrator. Resolving those issues itself, the court determined that the arbitration agreement was not unconscionable. The court further found that Raymond, Erika, and Thomas were not parties to the agreement and thus their claims were not subject to arbitration. Finally, the court found that if the family's claims proceeded to trial while Kathleen's claims were subject to arbitration, there was a risk of inconsistent rulings in a case where the family's claims were premised upon similar if not identical facts as those brought on Kathleen's behalf. Pursuant to section 1281.2, subdivision (c), the court refused to enforce the arbitration agreement so that all claims could be adjudicated consistently.

Rejecting WellQuest's argument that the FAA governed the arbitration agreement, the court held that the agreement did not "expressly incorporate the FAA's procedural provisions" but merely stated that claims shall be resolved "in accordance with the Federal Arbitration Act." According to the trial court, this language was insufficient to expressly designate the FAA's procedural provisions as controlling. The court did not address the parties' remaining arguments.

The trial court subsequently granted plaintiffs' motion for trial preference. WellQuest filed a notice of appeal from the order denying the motion to compel

---

**4**      Further undesignated statutory references are to the Code of Civil Procedure.

arbitration and the court then granted WellQuest's motion to stay the action pending the appeal, but that trial preference was to be maintained should we affirm.

This appeal is expedited pursuant to California Rules of Court, rule 8.710 et seq.

DISCUSSION

I

*Arbitrability*

WellQuest contends that the arbitration agreement clearly and unmistakably delegates the task of deciding threshold arbitrability issues to an arbitrator, and the trial court erred in concluding otherwise. We disagree.

In general, when a motion to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the trial court must determine whether a valid agreement exists and, if any defense is asserted, whether the agreement is enforceable. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*).) The trial court sits as a trier of fact, weighing the evidence submitted to reach a final determination. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

However, " 'parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.' " (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 891 (*Aanderud*).) " 'There are two prerequisites for a delegation clause to be effective. First, the language of the clause must be clear and unmistakable. [Citation.] Second, the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability.' [Citations.] The 'clear and unmistakable' test reflects a 'heightened standard of proof' that reverses the typical presumption in favor of the arbitration of disputes." (*Id*. at p. 892, italics omitted.) When the parties "clearly and unmistakably" delegate issues of arbitrability, the arbitrator, not the court, decides issues as to the scope of the arbitration agreement. (*Dream Theater, Inc. v. Dream Theater* (2004)

124 Cal.App.4th 547, 552; see also *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 772-773.)  In deciding whether the parties agreed to arbitrate issues of arbitrability, " 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.' "  (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 244.)

On appeal, we review issues of law de novo and the trial court's factual findings under the substantial evidence standard.  (*Kinder v. Capistrano Beach Care Center, LLC* (2023) 91 Cal.App.5th 804, 811.)  Where the facts are undisputed, we independently review the case to determine whether a valid arbitration agreement exists.  (*Hearden v. Windsor Redding Care Center, LLC, supra*, 103 Cal.App.5th at p. 1016.)

In this case, the trial court found that the arbitration agreement did not apply to claims brought by Raymond, Erika, and Thomas as they were not parties to the agreement.  WellQuest does not challenge that ruling and we agree with the trial court. " ' "[T]he right to compel arbitration depends upon the contract between the parties, [citations], and a party can be compelled to submit a dispute to arbitration only where he has agreed in writing to do so." ' "  (*Benaroya v. Willis* (2018) 23 Cal.App.5th 462, 469.) Although there are circumstances in which nonsignatories to an agreement containing an arbitration clause can be compelled to arbitrate under that agreement, none of them are present here.  (See *ibid*.)  Accordingly, as Raymond, Erika, and Thomas were not parties to the arbitration agreement, it does not bind them or their independent claims.

With respect to Kathleen's survivor claims, the trial court found that WellQuest established the existence of a valid arbitration agreement.  WellQuest agrees and its challenge to the court's ruling pertains solely to the scope of the agreement (i.e., whether issue of arbitrability should be submitted to the arbitrator and whether the court correctly refused to enforce the agreement).

Specifically, WellQuest challenges the trial court's finding that the "clear and unmistakable" requirement for delegation was not met.  The language at issue is "*all*

*claims relating to this Agreement or to your rights or obligations . . . shall be subject to arbitration. The parties agree that an arbitrator will decide any question about whether a claim or dispute must be arbitrated.*" (Italics added.) According to WellQuest, the "plain language itself leaves no question that the parties intended for an arbitrator to determine 'whether a claim or dispute must be arbitrated.' " The trial court disagreed, finding that the clause "does not clearly and unmistakably delegate to the arbitrator the threshold issues of arbitrability, including issues of unconscionability or enforceability of the Arbitration Provision." On appeal, WellQuest urges us to conclude otherwise and further claims that by incorporating language providing that the "arbitration shall be administered by" JAMS, the agreement "clearly and unmistakably reflects the parties' intent to delegate the decision on arbitrability to the arbitrator." In support of its contention, WellQuest cites *Aanderud, supra*, 13 Cal.App.5th 880.

In *Aanderud*, the arbitration provision stated that the parties " 'agree to arbitrate all disputes, claims and controversies arising out of or relating to . . . (iv) the interpretation, validity, or enforceability of this Agreement, including the determination of the scope or applicability of this Section 5 [the "Arbitration of Disputes" section]. . . .' " (*Aanderud, supra*, 13 Cal.App.5th at p. 892, underlining omitted.) The *Aanderud* court concluded that that language clearly and unmistakably delegated to the arbitrator questions of arbitrability. (*Ibid*.; see also *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1560 [delegation clause that provided " '[t]he arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement' " was clear and unmistakable]; *Momot v. Mastro* (9th Cir. 2011) 652 F.3d 982, 988 [language delegating authority to arbitrator to determine " 'the validity or application of any of the provisions of' " the arbitration clause was a clear and unmistakable agreement to arbitrate the question of arbitrability].)

The *Aanderud* court also found other evidence of the parties' intent to contractually delegate issues of arbitrability to an arbitrator. (*Aanderud, supra*,

13 Cal.App.5th at pp. 892-893.)  Specifically, the arbitration provision stated that JAMS shall administer the arbitration pursuant to its "Streamlined Rules and Procedures" and provided the Internet link to those rules.  (*Id*. at p. 892.)  The court noted that JAMS rule No. 8 expressly assigned issues of arbitrability to the arbitrator.  Thus, the court concluded, reference to the JAMS rules was further evidence of the parties' clear and unmistakable intent to submit issues of arbitrability to the arbitrator.  (*Ibid*.)

Here, in contrast, the language purporting to delegate arbitrability to an arbitrator does not include the specificity found in the agreements in *Aanderud*, *Malone*, or *Momot*.  Rather, the language here is silent as to the issues of interpretation, enforceability, and unconscionability of the agreement.  In addition, unlike in *Aanderud*, the provision stating that JAMS shall administer the arbitration makes no reference to the applicable rules and procedures, nor does there appear to be an Internet link to the rules, an attached copy of the rules, or any other indication that the rules were available to the parties prior to signing the arbitration agreement.  Under these circumstances, we cannot find that language reflects the parties' clear and unmistakable intent to delegate all issues of arbitrability to an arbitrator.  (Cf. *Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1051 [rejecting claim that reference to the American Arbitration Association Commercial Arbitration Rules proves the parties' intent to delegate threshold questions of enforceability to the arbitrator in part because an unsophisticated plaintiff " 'would need to locate the arbitration rules at issue, find and read the relevant rules governing delegation, and then understand the importance of a specific rule granting the arbitrator jurisdiction over questions of validity' "].)

We find the reasoning in *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771 (*Ajamian*) helpful in our interpretation of the agreement.  In *Ajamian*, the arbitration provision stated:  " 'Any disputes, differences or controversies arising under this Agreement shall be settled and finally determined by arbitration . . . .' " (*Id*. at p. 777.)  The provision further stated:  " 'It is expressly agreed that arbitration as provided herein

shall be the exclusive means for determination of all matters arising in connection with this Agreement and neither party hereto shall institute any action or proceeding in any court of law or equity other than to request enforcement of the arbitrators' award hereunder. The foregoing sentence shall be a bona fide defense to any action or proceeding instituted contrary to this Agreement.' " (*Ibid*.)

In determining whether this language clearly and unmistakably demonstrated the parties' intent to delegate the issue of arbitrability to an arbitrator, the appellate court reasoned as follows. "It is true that one reasonable inference from this language is that the parties, in designating arbitration as the exclusive means for determining '[a]ny disputes, differences or controversies' (and precluding court actions and providing a defense to them on this ground) intended that even threshold issues of unconscionability would be decided by the arbitration panel. But another reasonable inference is that all of this language is only intended to bring within the exclusive scope of arbitration all substantive disputes, claims or controversies on which a court action might otherwise be brought, while the enforceability of the arbitration provision itself remains a matter for determination by a court. Indeed, because that is the usual expectancy of the parties, the absence of any express language pertaining to threshold enforceability questions either reinforces that proposition or at least fails to cure the ambiguity. In light of the possibility of these two conflicting inferences, the language fails to meet the test of clear and unmistakable evidence." (*Ajamian, supra*, 203 Cal.App.4th at p. 783, italics omitted; see also *Gostev v. Skillz Platform, Inc., supra*, 88 Cal.App.5th at p. 1050 ["Because the usual expectation of the parties would be that a court, not an arbitrator, decides threshold issues of arbitrability, 'the absence of any express language pertaining to threshold enforceability questions . . . fails to cure the ambiguity' "].) So too here.

Contrary to WellQuest's contention, the plain language of the arbitration provision only speaks to "whether a claim or dispute must be arbitrated" and says nothing about other aspects of arbitrability, such as interpretation or enforcement of the arbitration

agreement. As in *Ajamian*, the absence of any express grant of authority to the arbitrator to decide these threshold issues results in two possible interpretations of the language. Because legal precedent requires more specific language to overcome the presumption that the court will decide issues of arbitrability, language in a delegation clause that allows for multiple interpretations cannot be deemed clear and unmistakable in establishing the parties' intent. As a result, WellQuest has not met its burden to establish that the parties agreed to delegate the issue of arbitrability.[5] (*Ajamian, supra*, 203 Cal.App.4th at p. 784.)

## II

### *Application of the FAA*

WellQuest contends that both procedural and substantive provisions of the FAA apply to the instant agreement, such that it preempts application of section 1281.2 and the trial court erred in relying on that statute in refusing to enforce the arbitration agreement. WellQuest does not contend that the court erred in analyzing whether the facts of the case satisfied section 1281.2. The question, therefore, is limited to whether the parties expressly incorporated the FAA's procedural provisions into the agreement. We conclude they did not and thus the procedural provisions of the California Arbitration Act (CAA) (§ 1280 et seq.) apply.

We review de novo the trial court's interpretation of an arbitration agreement, including whether federal or state law applies where, as here, the interpretation does not involve conflicting extrinsic evidence. (*Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 946.) "[W]e examine the language of the contract to determine whether the parties intended to apply the FAA to the exclusion of California procedural law." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 383

---

[5] In light of this conclusion, we need not address plaintiffs' additional arguments regarding unconscionability.

(*Cronus*).)  We interpret the meaning of the agreement for arbitration in light of the contract terms' plain meaning.  (See *Zakarian v. Bekov* (2002) 98 Cal.App.4th 316, 325.)

The procedural rules of the FAA and the CAA are both grounded in a policy of " 'treating arbitration [agreements] like all others,' not one preferring arbitration to litigation."  (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 583; see also *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 418.)  "[T]he CAA's procedural rules apply by default to cases brought in California courts, including those in which the FAA governs the arbitrability of the controversy."  (*Quach*, at p. 582.)  Section 1281.2 of the CAA generally requires a trial court to enforce a valid written arbitration agreement unless one of three limited exceptions applies.  "Those statutory exceptions arise where (1) a party waives the right to arbitration; (2) grounds exist for revoking the arbitration agreement; and (3) pending litigation with a third party creates the possibility of conflicting rulings on common factual or legal issues.  (§ 1281.2, subds. (a)-(c).)" (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 967.)

In contrast, the procedural provisions of the FAA apply in federal court proceedings related to arbitrations and, by their own terms, do not apply in state court. (*Cable Connection, Inc v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1351; *Swissmex-Rapid S.A. de C.V. v. SP Systems, LLC* (2012) 212 Cal.App.4th 539, 544 ["The FAA's substantive provisions are applicable in state as well as federal court, while the FAA's procedural provisions apply only to proceedings in federal court"].)  The procedural provisions of the FAA "do[ ] not include a provision comparable to . . . section 1281.2[, subdivision ](c) and therefore requires courts to enforce written arbitration agreements even if there is pending litigation involving a third party that may result in conflicting rulings."  (*Acquire II, Ltd. v. Colton Real Estate Group, supra*, 213 Cal.App.4th at p. 968.)  Under the FAA, "the court's only option in these circumstances is to stay the court proceeding and compel the arbitration."  (*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1115 (*Rodriguez*).)

Nevertheless, "the FAA's procedural rules may apply if the parties expressly agree they do or if the CAA's procedural rules are preempted." (*Quach v. California Commerce Club, Inc., supra*, 16 Cal.5th at p. 582; see *Cronus, supra*, 35 Cal.4th at p. 394 [the parties may "expressly designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law" (italics omitted)]; *Rosenthal, supra*, 14 Cal.4th at p. 409 [" 'States may establish the rules of procedure governing litigation in their own courts,' even when the controversy is governed by substantive federal law"].) "Absent such an express designation, however, the FAA's procedural provisions do not apply in state court." (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 174 (*Valencia*).)

Here, the trial court found the arbitration agreement does not expressly incorporate the FAA's procedural provisions. Examining the plain language of the agreement, we agree. The parties agreed to engage in arbitration "in accordance with" the FAA, which means "in a way that agrees with or follows" the FAA.[6] Thus, any arbitration must be consistent with the FAA, but the agreement does not specify whether this intent applies to substantive, procedural, or both types of the FAA's provisions.

This lack of specificity is fatal to WellQuest's claims that the procedural provisions of the FAA apply.

In an attempt to persuade us otherwise, WellQuest relies on *Rodriguez, supra*, 136 Cal.App.4th 1110 as support for its contention that the phrase "in accordance with" the FAA is broad and unconditional such that there is no ambiguity regarding the parties' intent to adopt *all* of the FAA's provisions. In *Rodriguez*, the plaintiffs filed suit against American Technologies, Inc. (ATI), a company they had contracted with to perform

---

[6]     Merriam-Webster Dictionary Online (2025) <https://www.merriam-webster.com/dictionary/in%20accordance%20with> (as of Mar. 18, 2026), archived at <https://perma.cc/Q74C-TK6K>.

remediation and repair work on their home.  The contract included an arbitration agreement that provided, " 'Pursuant to the Federal Arbitration Act, any controversy or claim arising [out] of or related to this Agreement or the breach of any provision thereof shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, unless the parties mutually agree otherwise.' " (*Rodriguez*, at p. 1116.)  ATI moved to compel arbitration and stay the proceedings.  As the plaintiffs' lawsuit also included claims against several insurance companies who were not parties to the contract, the plaintiffs opposed the motion relying on section 1281.2, subdivision (c).  (*Rodriguez*, at p. 1116.)

The *Rodriguez* court started its analysis by noting that the contract at issue before it specified that claims shall be arbitrated " 'pursuant to the FAA,' " and that in "common understanding, the phrase 'pursuant to' means 'in conformance to or agreement with' and 'according to.' " (*Rodriguez, supra*, 136 Cal.App.4th at p. 1122.)  The court went on to note, "Plainly, the language of the contract requires the parties to arbitrate 'in conformance to' and 'agreement with' the FAA," and that there was no "other contract provision suggesting the parties intended to incorporate California arbitration law." (*Ibid*.)  The *Rodriguez* court thus concluded the agreement to arbitrate claims " 'pursuant to the FAA' " was broad and unconditional, adopting all provisions—including procedural—of the FAA to govern the parties' agreement, and because there was no contract provision suggesting the parties intended to apply California arbitration law, there was no ambiguity about the parties' intent to apply the FAA's substantive and procedural law to their agreement.  (*Rodriguez*, at p. 1122.)

While we acknowledge the language in the instant agreement requiring parties to arbitrate claims "in accordance with the Federal Arbitration Act" is similar to the agreement in *Rodriguez* to arbitrate " 'pursuant to' " the FAA, we disagree with *Rodriguez*'s conclusion that the use of such broad language indicates the parties' intention to deviate from the default application of the CAA to *expressly* designate the

procedural rules of the FAA as applicable. We believe the appropriate point to start our analysis is by recognizing that California Supreme Court precedent teaches that the CAA applies to state court proceedings by default, the federal procedural provisions do not, and in order to indicate an affirmative choice to be bound by the FAA's procedures over the expected CAA provisions the parties are required to expressly state so—which requires more exacting language than what is present here.

By example, in *Cable Connection, Inc v. DIRECTV, supra*, 44 Cal.4th 1334, the contract at issue involved interstate commerce, so the FAA's substantive provisions (9 U.S.C. § 2) applied. A choice-of-law clause concerning procedural matters stated: " '[A]ny arbitration conducted hereunder shall be governed by the [FAA].' " (*DIRECTV*, at pp. 1341-1342, fn. 3.) The court concluded this language did not make the FAA's procedural sections regarding judicial review (9 U.S.C. §§ 10, 11) applicable in state court, in part because the "contract did not specify whether enforcement proceedings were to be brought in state or federal court." (*DIRECTV*, at pp. 1350-1351, fn. 12.) And, the court noted, the language of several of the FAA's procedural sections "reflects Congress's intent to limit the application of those provisions to federal courts." (*DIRECTV*, at p. 1351, citing 9 U.S.C. §§ 3, 4, 10, 11; see also *DIRECTV*, at pp. 1351-1352; *Rosenthal, supra*, 14 Cal.4th at p. 409 [noting the FAA's procedural provisions are not binding on state courts so long as " 'applicable state procedures do not defeat the rights granted by Congress' " (italics omitted)].)

Similarly, in *Cronus, supra*, 35 Cal.4th 376, the FAA's substantive provisions (9 U.S.C. § 2) applied because the contract involved interstate commerce. The contract also contained a choice-of-law clause incorporating the CAA. (*Cronus*, at p. 387.) But another choice-of-law clause stated, " '[t]he designation of . . . a governing law for this agreement or the arbitration shall not be deemed an election to preclude application of the [FAA], if it would be applicable.' " (*Id*. at p. 381.) The multiple provisions resulted in ambiguous language regarding the scope of the FAA's applicability. The court refused to

construe any ambiguities as to the scope of the arbitration provision against the application of section 1281.2, subdivision (c), especially in light of the fact that the FAA's procedural provisions were intended to apply only in federal court proceedings. (*Cronus*, at pp. 388-389, 391.) Nevertheless, the court stated, "Our opinion does not preclude parties to an arbitration agreement to *expressly* designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law." (*Id*. at p. 394.)

In *Valencia*, the appellate court conducted an exhaustive review of cases from the United States Supreme Court, the California Supreme Court, and California Courts of Appeal on whether the FAA's procedural provisions apply in state court by looking at the plain meaning of the arbitration agreements. (*Valencia, supra*, 185 Cal.App.4th at p. 162.) We too have addressed some of these cases—*Cronus, DIRECTV*, and *Rodriguez* —*infra*. From these cases, the court in *Valencia* determined that in evaluating the plain language of the agreement, the key determination was whether the "parties expressly incorporated the FAA's procedural provisions into their agreements," otherwise they do not apply. (*Id*. at p. 177, italics omitted.) Because there was no such language in the agreement in that case and instead it expressly incorporated the CAA's procedural provisions, the *Valencia* court concluded that the parties had not agreed to apply the FAA procedural rules. (*Valencia*, at p. 178.) So too here.

WellQuest correctly notes that, unlike in *Valencia*, the arbitration agreement at issue in the instant case does not expressly incorporate the procedural provisions of the CAA. It was not required to do so. Given the absence of contrary language, the parties implicitly consented to application of the CAA's procedural provisions by default. "[T]he question is not whether the parties adopted the *CAA*'s procedural provisions: The state's procedural statutes (§§ 1281.2, 1290.2) apply by default because Congress intended the comparable FAA sections (9 U.S.C. §§ 3, 4, 10, 11) to apply in federal court." (*Valencia, supra*, 185 Cal.App.4th at p. 177, see *id*. at p. 179 ["Assuming the

parties failed to incorporate the CAA's procedural provisions, that failure was of no consequence:  A state's procedural statutes automatically apply in state court unless the parties expressly agree otherwise" (italics omitted)]; *Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 345.)

We agree with the conclusion in *Valencia* that because the CAA applies by default, the parties need not expressly adopt those provisions.  Rather, we assume that California arbitration agreements are drafted with this rule in mind, and that they incorporate the CAA's procedural rules absent an express indication to the contrary. (14A Cal.Jur.3d (2025) Contracts, § 241 ["Parties are presumed to have had existing law in mind when they executed their contractual agreement, and 'existing law' includes decisions of appellate courts interpreting statutes"].)  Accordingly, there is no obvious reason to treat an agreement to which the CAA's procedural rules apply by default differently from one that expressly states that the CAA's procedural rules apply.  (See *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 785 [observing that the distinction between agreements that "expressly incorporate the CAA" and those that do not does not affect the preemption analysis because "the arbitration agreement . . . incorporates the CAA by default"], overruled on other grounds in *Hohenshelt v. Superior Court* (2025) 18 Cal.5th 310, 349; but see *Hohenshelt*, at p. 351 (conc. opn. of Groban, J.).)  Absent an express indication to the contrary, a California arbitration agreement generally should be interpreted as incorporating the CAA's procedural rules.  Because we have no such express indication that the FAA procedural provisions apply instead, we conclude they do not.  Thus, the trial court was within its discretion to consider the application of section 1281.2.

In light of our conclusion, we need not address WellQuest's argument, raised for the first time in its reply brief, that Raymond's, Erika's, and Thomas's claims should be stayed pending arbitration of Kathleen's survivor claims.  Nor need we discuss plaintiffs' additional arguments as to whether the trial court properly exercised its discretion in

applying section 1281.2 or as to the existence of additional defenses to the arbitration agreement.

## DISPOSITION

The judgment is affirmed.  Plaintiffs are entitled to recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
EARL, P. J.

We concur:

/s/
HULL, J.

/s/
MESIWALA, J.